**OFFICE OF THE SPECIAL MASTER**

**Gemmell v. Hawkins** – C. A. No. 16-350 WES

---

**Report (#1) to the Court**

This Report is filed pursuant to Section IV.A.8 of the Order Appointing Special Master. Under that Order and the Court's directive, I have both long-term and short-term responsibilities. Long term, I am charged to develop and recommend a corrective action plan for the processing of SNAP applications in accordance with the consent Order entered February 28, 2017, and to report my doings to the Court. Short term, I am to oversee the implementation of a plan to address the backlog of expedited SNAP applications.

At the outset, I note that the parties and counsel have been cooperative and have supplied me with useful information. I have had free access to interview those involved with the system in some fashion. While I do not profess to be an expert in SNAP applications at this point, nevertheless I believe that I have - or will have soon - sufficient familiarity with the SNAP program and the processing of applications to assist in guiding the process toward compliance with the consent Order.[1] The UHIP/RI Bridges system is complicated, with many moving parts, and there is no magic bullet. There are some 170,000 persons in Rhode Island who participate in the food snap program and there are thousands of new applications each month. I recognize that there is an urgency to ensure that eligible persons receive food stamps in a timely fashion, and that will guide my approach.

---

[1] I have not decided whether to engage a technical consultant but will be interviewing potential consultants shortly.

Activities

During the month of November 2017, I have engaged in the following actions: I have met with counsel for both parties and representatives of the Department of Human Services ("DHS") together on two occasions. I met and conferred with the Director of DHS and her support staff on several occasions. I have met with Ken Brindamour, the Department of Administration's technical consultant who is currently in charge of the UHIP/RIBridges project. I have met with personnel from Rhode Island Legal Services and the URI Feinstein Center, and I have met with the project manager for Deloitte Consulting, the principal consultant for the development and installation of the system. I visited the Providence office of DHS on Elmwood Avenue and the Scanning Center in Warwick. The dates and times of these meetings and activities are set forth in my time sheet submitted herewith.

It is clear from these interviews that the UHIP/RIBridges system has a number of flaws that are causing problems with the timely processing of SNAP applications and are causing frustrations on all sides. As I understand it, the system was designed to be a centralized system so that in theory a person seeking social services would file one application (primarily through the "customer portal" on the computer system), and the system would enable DHS workers to determine what services the applicant is entitled to. The SNAP program is one of several programs that comprise the RIBridges segment of the system. The system has not fully worked as designed, and there is a considerable effort under way to remedy the problems. My focus has been on the SNAP applications, especially those that have been substantially delayed beyond the federal requirements, and not on the other programs that are part of RIBridges (Medicaid, Child Care Assistance Program, Rhode Island Works, and Long Term Services and Supports), all of which have been experiencing problems.

Short-Term Issue: Backlog of Expedited SNAP applications.

At the hearing before the Court on November 2, 2017, the State indicated that it was developing a plan to address the substantial backlog of expedited SNAP applications.[2] This plan was a subject of discussion at the November 9 meeting and the State thereafter published its plan to the parties. Essentially, the State committed to process the backlog of all expedited SNAP applications by November 19, and the backlog of all non-expedited SNAP applications by November 29. I am pleased to report that the goals with respect to processing the backlogged expedited and non-expedited applications have been met. Further, DHS is working through remaining SNAP applications that need further client information (documentary or otherwise). This was accomplished by making these applications a priority and processing them using overtime workers on weekdays and weekends. Further, the State is almost current (less than 40 overdue applications statewide) in processing new SNAP applications and is giving priority to becoming current.

Long-Term Issues

Based on these interviews and visits, I see several major areas that need to be addressed:

1. Customer portal. The customer portal, through which most of the applications for services were supposed to be filed has not worked properly. It is essentially an electronic application.[3] It apparently does work better with respect to the SNAP applications, but those social workers with whom I spoke who help applicants file applications are critical of the design of the system. As a result, most applications are

---

[2] Under federal regulations, expedited SNAP applications must be processed within 7 calendar days, and non-expedited applications must be processed in 30 calendar days.
[3] The computerized application is a series of screens similar to a paper application. The paper application relates to all programs for which an applicant may be eligible, including SNAP benefits, and is lengthy, approximately 30 pages.

filled out on paper and are scanned into the system either at field offices or at the central scanner in Warwick, and this has led to problems losing documents in the system.  Trying to simplify the customer portal and paper applications for SNAP applicants is something that I am addressing.

2. <u>Central Call Center (Pawtucket).</u>  Calls regarding applications are directed to a central call center rather than to the office near the applicant.  The call center often requires that an applicant wait 2 to 3 hours to speak to a worker.  These delays often cause applicants to file separate applications, which can further contribute to delays.  It is clear to me that the call center is understaffed and that this must be addressed with additional, well-trained - and not entry-level - personnel as soon as possible.

3. <u>Long lines at DHS offices.</u>  There are often long lines for applicants (not just for SNAP) at the DHS offices around the state, and in some cases if applicants do not get to the offices early in the morning they cannot be serviced that day.  I will be looking at solutions for this with my focus primarily on the timely processing of SNAP applications.  In Providence, DHS is installing a separate office in the building on Elmwood Avenue solely for the processing of SNAP applications, expedited and otherwise.  This new office will open December 1 and will help to alleviate the problem of untimely processing at that location.  If successful, DHS will look at something similar at other locations.

4. <u>Scanning Center (Warwick).</u>  A person may make a SNAP application in one of three ways:  (1) through the customer portal (often the applicant has help from a social service worker); (2) written application delivered to a DHS office in person or dropped in a mailbox on site); and (3) written application mailed in to a P.O. Box in

Cranston, which applications are sent to the scanning center in Warwick. Written applications are scanned into the system either at the DHS office or the Warwick scanner. Each application gets a number. Often there are back-up documents that are subsequently entered into the system that should be - but often do not get - attached to the applications already on line. Due to a computer problems with scanning equipment, many documents have been fed into the system but have to be tracked down. My impression is that the system has been functioning better, but this will be a focus on my efforts.

5. <u>Worker Inbox.</u> The processing of applications has been delayed because the worker inbox (which is the entrance of SNAP workers into the system) has not worked properly. When there is a problem in the processing due to a computer error, a "red ticket" is created that is given to Deloitte to fix, and this can often take weeks or months depending on the nature of the problem. This is a process that I will be discussing further with Deloitte. There is also a need for a tickler system so that workers can see what deadlines are approaching. There is an open question in my mind as to whether there are sufficient numbers of workers to process applications on a non-overtime basis.

6. <u>Incorrect Notices</u>. There are continuing problems with incorrect and duplicative notices to the applicants.

In the coming months, these are the areas that I will be focusing on to trying to drive fixes as soon as possible. I am interested in trying to segment the SNAP applications from the rest of the system in some fashion to allow them to be processed more quickly, especially the applications for expedited food stamps. The UHIP/RIBridges problems are a combination of

personnel and technical issues.[4]  I am impressed that the current Director of DHS is taking steps to address these problems and understands the urgency that exists.  I will be meeting regularly with Deloitte, which has some 600 employees in the US and elsewhere working on this system.  I will be meeting further with Ken Brindamour, the State's consultant.  I am informed that there will be an upgrade in February that will address at least some of the problems.  Also, I will be interviewing the Food and Nutrition Services employee overseeing this project from the federal perspective.  I have scheduled a further meeting of the parties and counsel on December 7.

        Respectfully submitted,

        /s/ Deming E. Sherman

        _____

        Special Master

December 1, 2017

cc Counsel of Record (by email)

---

[4] For the system to work property the applicants have some responsibilities, such as signing the application.  When they do not sign applications or properly submit back-up documents in accordance with federal regulations, this causes some delays in processing applications.